## The Lewisburg Bridge Company, Appellant, *v.* The County of Union and The County of Northumberland.

*Jurisdiction—Subject-matter of suit—Statutory remedy—Viewers—Intercounty bridges—Franchises—Condemnation.*

1. Objections to the jurisdiction are of two classes, between which there is a clear and well-defined distinction; first, those relating to the authority of the court over the subject-matter, and secondly, those relating to its authority over the parties. Objections of the first class cannot be waived or jurisdiction obtained by acquiescence.

2. Section 13 of the Act of March 21, 1806, 4 Sm. L. 326, which provides: "In all cases where a remedy is provided, or duty enjoined or

anything directed to be done by any Act or Acts of Assembly . . . ., the directions of the said Acts shall be strictly pursued; no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases further than shall be necessary for carrying such Act or Acts into effect," applies to ordinary civil suits, and where the controlling act of assembly provides a special remedy, such remedy must be pursued.

3. The plaintiff, a bridge company, owned a bridge erected to take the place of a destroyed bridge under the special Acts of March 23, 1865, P. L. 602, and February 19, 1868, P. L. 177, the ninth section of the latter providing: "All property and franchises held by the said company at the site of the old bridge shall continue to be held in the same manner as if the bridge had been re-erected." The latter bridge was located about 500 feet north of the old bridge, part of the abutments and the tollhouse of which remained. Subsequently the two counties whose boundary line was the river constructed a free bridge at the site of the old bridge, in the construction of which there was used stone from the abutments of the former bridge. It also appeared that the contractor caused the old tollhouse to be broken into, and at a later date, the building was put up at public auction by the county commissioners and sold. The parties were unable to agree as to the amount of damages sustained, if any. The bridge company brought an action in trespass against the two counties to recover damages for violation of their franchise and for the taking of the stone, the tollhouse, and the land upon which it stood. *Held*, that the Act of May 6, 1897, P. L. 46, as amended by the Act of May 13, 1901, P. L. 191, providing in such a case for compensation to be made to the owners of a former bridge for the taking or impairment of their franchises or the taking of piers, approaches, tollhouses or other property by the appointment of viewers to assess damages, furnished a special remedy which the plaintiffs must pursue, and the common pleas has no original jurisdiction over the subject-matter.

4. In such a case the fact that the defendants contended that the property claimed for had long since been abandoned and had no value, was not such a denial of the claimant's title as would estop the defendants from demanding their right to have the case tried according to the method prescribed in the statute.

5. The ninth section of the Act of February 19, 1868, did not allow the plaintiff a continuing franchise at the site of the old bridge as well as at the site upon which the new bridge was to be constructed.

*Constitutional law—Act of May 13, 1901, P. L. 191—Eminent domain—Securing of damages—Municipal corporation—Ascertainment of damages—Interpretation of act—"Shall" as meaning "may."*

6. The act of May 13, 1901, is not unconstitutional, either because

there is no express provision for paying or securing the damages before the taking, or because it is wanting in providing a proper method for the ascertainment and payment of damages or for the concurrent action between the counties in relation thereto, since the first is unnecessary where the power of eminent domain is exercised by municipal corporations, the taxing power being sufficient security, and as to the second the act distinctly declares that damages shall be paid, fixes the proportion in which they shall be paid and provides machinery for ascertaining them, leaving only the details for the courts and administrative authorities to work out.

7. The provisions of the act of 1901, "If the said Commissioners of the said counties shall neglect or refuse to act as herein provided, upon the petition of fifty property owners and taxpayers residing in the city, borough or township in which the bridge is or was located, which petition shall set forth fully all the facts supported by the affidavit of five of said property owners and taxpayers, to the court of common pleas of the counties where located, upon hearing, said court having jurisdiction shall issue a mandamus to said commissioners to proceed as provided by this act," means that the courts in each of the counties shall have jurisdiction over the commissioners of their own county; that the commissioners are first authorized to use their discretion as to whether or not a bridge shall be built, but this discretion is expressly subject to review by the common pleas of the respective counties; and if on review the court decides that the commissioners, under the facts presented, should exercise their authority for the purpose of the joint construction of an intercounty bridge, that it can compel action by a mandamus. The word "shall" with its context is to be construed as meaning "may."

Argued Feb. 14, 1911. Appeal, No. 18, Jan. T., 1911, by plaintiffs, from judgment of O. C. Lycoming Co., June T., 1910, No. 321, on verdict for defendants in case of The President, Managers and Company for erecting a bridge over the west branch of Susquehanna at the Town of Lewisburg, otherwise called the Lewisburg Bridge Company v. The County of Union and the County of Northumberland. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Action in trespass to recover damages because of the construction of a rival bridge erected under the Act of May 6, 1897, P. L. 46, as amended by the Act of May 13, 1901, P. L. 191. Before HART, P. J.

The plaintiff claimed that its franchise was an exclusive one, and that the erection of a new inter-county bridge had depreciated the value of the franchise. The court below ruled that it was not exclusive and refused to admit evidence offered to show the alleged depreciation. The plaintiff's bridge was erected under and by authority of the special Acts of March 23, 1865, P. L. 602 and of February 18, 1868, P. L. 177, to take the place of an old bridge which had been destroyed. Section 2 of the latter act provides: "That said company be and are hereby empowered to rebuild said bridge . . . . at any place within half a mile of the location of the old bridge . . . . and that the site where the new bridge has been located and commenced, north of where the old one stood, is hereby made valid . . . ." and sec. 9, "All property and franchises held by said company at the site of the old bridge shall continue to be held in the same manner as if the bridge had been there re-erected."

The other facts in the case are sufficiently stated in the following abstracts from the charge of the trial judge: "The plaintiff seeks to recover the value of certain stone, . . . . and also for the value of a certain toll house, and the land occupied by the toll house and leading from the toll house to the Susquehanna river. The plaintiff company is a corporation originally incorporated by Act of . . . . March 26, 1814, P. L. 223, in which it was authorized to erect a bridge from the east end of Market street, in the town of Lewisburg, to the opposite shore; . . . . the plaintiff company did proceed and construct a bridge . . . . upon piers located in the river and abutments at either end. . . . This bridge continued to be used down to the year 1865, when, on the 17th day of March, of that year, it was destroyed by a flood. In the year 1867, the plaintiff constructed another bridge at a point which is about 400 feet north from the old bridge, at the western side of the river, and a distance of about 200 feet north at the east side of the river. . . . Subsequent to the destruction of this old bridge . . . .

and to the building of the new bridge . . . . the county of Union and the county of Northumberland constructed a free bridge at the site of the old bridge as located prior to 1865; in the construction of this inter-county bridge there was used . . . . stone taken from the western abutment, and it has been testified on the part of the plaintiff that this stone amounted to about four carloads; . . . . It is my recollection that the testimony showed that there were two carloads used in the construction of . . . . the new bridge . . . . and that the other two carloads were not used in the new bridge, but were used by the contractor. . . . It is also shown on the part of the plaintiff that about the time of the commencement of the construction of this new bridge, which was on the 30th of December, 1905, . . . . the contractor, or those who were interested in clearing the ground for the construction of the new bridge, caused this old toll house to be broken into, and . . . . at a later date the building was put up at public auction by the Commissioners of Union and Northumberland counties and sold at public sale, and that there was derived from this sale the sum of $56.50, including the foundation and all. It has been testified on the part of the plaintiff by Mr. Wendel that he lived in this house from 1874 down to 1894, and that he had not been in the house from that time down to the sale, but gives it as his opinion that the whole premises, assuming that the plaintiff was the owner of the land on which they were located, were worth about a thousand dollars, and he fixed its market value at about that figure, but also said that considering the building alone he did not consider it of much value. . . . Now this is substantially the testimony on the part of the plaintiff that relates to the subject of our inquiry . . . .; it presents at least two questions in reference to the stone—one as to the amount of stone that was actually taken and made use of by the defendants . . . . and the other as to the value thereof. The only witness that I recall that undertook to testify as to the value of this stone said that such stone

had a value of about one dollar and forty cents a perch, but stated further that in place they did not possess much if any value. . . . The value of the building, considering it as an independent proposition, must depend upon what it was worth at that place and at the time it was taken. If the land is considered with it, then of course the measure of value would be the value of the house as it stood there at the time and any other property connected with it.'' Here the trial judge refers to the testimony going to show the circumstances under which the toll house was erected and whether or not it stood upon ground which could be classed as a public street, after which he said: ''If the jury believe from the evidence that plaintiff never had any other title to this land, and there is no evidence here of any grant of title to any piece of ground connected with this bridge at the western end, then when it ceased to use this ground for bridge purposes, or when it ceased to use it for the purpose of maintaining a toll house there for that bridge, the land reverted back to either the original owner or to those by whom it was dedicated, and the plaintiff would have no right to damages for the land itself in this action. . . . If you believe that this land was public property, then we say to you that when the plaintiff bridge company ceased to use this land for the necessary purposes of a bridge at that place it had no longer a claim in the soil or to this easement that it may have up to that time enjoyed. . . . The next question you come to is, if you find this was public land there, a street or a dedicated plot of ground, and that plaintiff had abandoned it for bridge purposes, what value had this toll house simply as a dwelling as it was used at the time of its being taken away. That is a question entirely for the jury under the evidence, and as you decide that so will you determine its value.'' In answering requests for charge, the court informed the jury that the plaintiff was entitled to recover what they might determine to be the worth of the toll-house, and also the value of the stone from the old bridge which was used in the construction of the new inter-county

bridge; but if they believed from the evidence that the property referred to had no real value, there could be no recovery.

Verdict and judgment for the defendant. The plaintiff appealed.

*Errors assigned* were rulings on evidence, charge of the trial judge and answers to requests for charge which raise the questions referred to in the opinion of the Supreme Court. Last assignment: overruling motion of plaintiff's counsel to withdraw a juror because one of the defendant's witnesses of his own accord, while the judge was off the bench, but while counsel for both sides were in the court room, indicated to the jury that a photograph before them showed the house in which the witness was born.

*Andrew A. Leiser* and *C. Larue Munson*, of *Candor and Munson*, with them *Erwin M. Beale*, and *Andrew A. Leiser, Jr.*, for appellants.—The court had jurisdiction of the subject-matter: Lafean v. York County, 20 Pa. Superior Ct. 573; Jeannette Boro. v. Roehme, 9 Pa. Superior Ct. 33; Byers v. Byers, 208 Pa. 23; Magee v. R. R. Co., 13 Pa. Superior Ct. 187; Lycoming Fire Ins. Co. v. Storrs, 97 Pa. 354.

The defendants are estopped to set up any defense based on the character of their action by their denial of any title in plaintiff to any property or franchises at the site of the old bridge: McMasters v. Carothers, 1 Pa. 324; Bradfords v. Kents, 43 Pa. 474; Eell's Est., 6 Pa. 457; Gordon v. Inghram, 32 Pa. 214.

Defendants have waived any right to such defense by going to trial and taking risk of the event of the suit: Daley v. Iselin, 212 Pa. 279.

Plaintiff had his election and could waive the statutory remedy: Brown v. Powell, 25 Pa. 229; Davis v. Southwest Penna. Pipe Lines, 34 Pa. Superior Ct. 438, 223 Pa. 56; Rabe v. Shoenberger Coal Co., 213 Pa. 252.

*W. H. M. Oram,* with *Albert W. Johnson, John F. Oram* and *James B. Krause,* for appellee.—The plaintiff is not entitled to recover in this form of action. White v. McKeesport Boro., 101 Pa. 394; McKee v. Pittsburg, 7 Pa. Superior Ct. 397; Moyer v. Kirby, 14 S. & R. 162; Criswell v. Clugh, 3 Watts, 330; Hawkins v. Pittsburg, 220 Pa. 7.

OPINION BY MR. JUSTICE MOSCHZISKER, July 6, 1911:

The appellee contends that the court below had no jurisdiction, and for that reason, if for no other, the judgment for the defendant should not be interfered with. To which the appellant replies that the question of jurisdiction is not in the case, since none of the assignments of error raise the point.

Aside from whether any error was committed in arriving at the judgment, was the result complained of inevitable under the law? For if it was, the judgment will not be disturbed. This inquiry necessarily involves the underlying jurisdictional question, in the proceedings as instituted and tried, could any judgment other than the one rendered have been sustained? If this is determined against the appellant, then all subordinate issues are out of the case and the appeal must be dismissed. The question of jurisdiction is before us to this extent at least.

"Objections to the jurisdiction are of two classes between which there is a clear and well-defined distinction, first, those relating to the authority of the court over the subject-matter, and, secondly, those relating to its authority over the parties. Objections of the first class cannot be waived or jurisdiction obtained by acquiescence:" Com. v. Barnett, 199 Pa. 161, 177; English v. English, 19 Pa. Superior Ct. 586.

The present action was brought in trespass to recover direct and consequential damages to the property and franchises of the plaintiff company. The Act of May 6, 1897, P. L. 46, as amended by the Act of May 13, 1901, P. L. 191, provides: "That the county Commissioners of

the several counties of this Commonwealth are hereby authorized to . . . . rebuild . . . . any bridge over any stream or river forming the boundary line between two counties, when the same is on the line of a public highway or deemed necessary for the use of the traveling public, . . . . which has been destroyed by ice, flood or otherwise, at any time, or which has been or may be abandoned, and the site or location and piers and abutments no longer used by the owners of said bridge, and the same rebuilt . . . . on another site, or on new foundations at another point. And the said commissioners of the respective counties are hereby authorized to take charge of and rebuild and maintain jointly such bridge as a county bridge, and the costs and expenses of such joint reconstruction shall be paid by the said counties respectively in the proportion of the population thereof as ascertained at the last census . . . .; provided, further, That just compensation shall be made to the owners of the former bridge for the taking or impairment of the rights and franchises of such owners, in the same manner as is provided in this Act for ascertaining the compensation due for the piers and abutments." The original act provides, sec. 4, "When the said commissioners have taken any piers, abutments, approaches, tollhouses or other property necessary for the rebuilding or maintenance of any bridge aforesaid, and are unable to agree with the owners upon the amount of the damages they may sustain by reason thereof, the Court of Quarter Sessions of the County in which said property is situate shall, upon petition of any party in interest, appoint three disinterested freeholders of such county to view the property and assess the damages, if any, which said owners may sustain by the taking of the same. . . ." The section further provides a right of appeal to the common pleas, and to the Supreme Court. Section 3 of this act likewise provides that the county commissioners of the respective counties "are hereby authorized to borrow any sum of money, not exceeding the constitutional limitations, . . . . and

issue bonds therefor, . . . ." for the purpose of carrying into effect the provisions of the act. And the amendment of 1901 provides that the commissioners may be compelled to act by mandamus. The new intercounty bridge was constructed subsequent to and under the provisions of this act of 1897 as amended in 1901.

Section 13, of the Act of March 21, 1806, 4 Sm. L. 326, 1 P. & L. Dig. 107, provides: "In all cases where a remedy is provided, or duty enjoined or anything directed to be done by any Act or Acts of Assembly, . . . . the directions of the said Acts shall be strictly pursued; no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases further than shall be necessary for carrying such Act or Acts into effect." In White v. McKeesport Boro., 101 Pa. 394, the action was in trespass to recover damages suffered in the grading of a public street. In affirming a judgment for the defendant we said, "The legislature has provided a special remedy for that kind of injury by the Act of May 24, 1878, P. L. 129, and that form of proceeding must therefore be adopted in all cases coming within its terms. The Act provides that in all cases where the proper authorities . . . . may . . . . change the grade . . . . of any street . . . . thereby causing damage to the owner or owners of property abutting thereon . . . ., in case they fail to agree with the owner for the proper compensation for the damages so done . . . ., the Court of Common Pleas of the proper county upon application . . . . shall appoint viewers, who shall proceed to assess the damages in the mode pointed out by the Act. This being the method established by law for the recovery of damages for changing grades . . . . it must be strictly pursued in accordance with the provisions of the Act of March 21, 1806, . . . ."

While it was at first doubted that the doctrine of the act of 1806, supra, applied to ordinary civil suits, this point has long been decided in the affirmative: Wike v. Lightner, 1 Rawle, 289; and there are a host of authorities in Pennsylvania applying the rule where the controlling

acts of assembly furnish a remedy to recover damages to property by means of a board of viewers, from McKinney v. Monongahela Navigation Co., 14 Pa. 65, to Deer v. Sheraden Boro., 220 Pa. 307. The controlling act of assembly in this case, as we have seen, provides that just compensation shall be made to the owners of the former bridge and that the proceedings to recover such damages shall be before a jury of view. "The Act having provided a special remedy, such remedy must be pursued:" Power v. Ridgway Boro., 149 Pa. 317, 318. This necessarily means that the court below had no jurisdiction over the subject-matter of the present suit in an action of trespass.

The plaintiff's contention that the defendant waived the issue of jurisdiction is not well taken. The defendant neither expressly nor by its conduct at any time waived this point, but on the contrary questioned the jurisdiction of the court in its plea, by a motion for a nonsuit, and by requests for binding instructions (see Wiggins v. Columbian Fire-Proofing Co., 227 Pa. 511, 516). This is a case where the jurisdictional point goes to the authority of the court over the subject-matter, and therefore the appearance to defend the action cannot be taken to have given jurisdiction by acquiescence. In substance, this was ruled against the contention of the plaintiff in Stork v. Philadelphia, 195 Pa. 101. There a claim was made before a jury of view for damages caused to property in the construction of a city improvement, an appeal was taken to the common pleas, and upon a verdict there rendered judgment was entered for the plaintiff and an appeal taken to this court. The evidence showed that the injury complained of was not the necessary consequence of the improvement, but that it arose through the negligent performance of the work. In reversing, we held that the liability declared upon could not be enforced in the form of proceeding adopted, and that the city was not estopped from raising the issue of jurisdiction, for the viewers could not be given authority to pass upon a question of liability which the law had not put within their jurisdiction.

We are constrained to hold that if the plaintiff suffered any injury by reason of the construction of the new inter-county bridge, the only body that had original jurisdiction to adjudicate a claim for the damages arising therefrom was the tribunal named in the act of assembly under and by authority of which the bridge was constructed, and the court below had no jurisdiction to entertain plaintiff's action.

But the plaintiff contends that the act in question is unconstitutional and void, and that since the constitution gives a right to damages for property taken, injured or destroyed, the present action could be maintained under the rule that "When a right exists and no adequate remedy is provided, it may be enforced by an action on the case:" Chester County v. Brower, 117 Pa. 647, 656. We cannot agree that the act should be set aside as unconstitutional legislation. The fact that there is no express provision in the statute for paying or securing the damages before the taking or injury, cannot be urged as a valid basic objection. In Keene v. Bristol Boro., 26 Pa. 46, 47, dealing with this subject, we said, "Ordinarily the power of taxation which is given to municipal corporations is adequate security to the citizen for his property which may be taken . . . . for public use." In McClinton v. Railway Company, 66 Pa. 404, it is pointed out that while private corporations invested with the right of eminent domain must pay or secure payment before the taking or injury, this strict rule does not apply to the state or to municipal corporations; as to them, it is only necessary to provide the means of payment in the act of assembly authorizing the improvement. And in Barrett v. Nealon, 119 Pa. 159, 171, we said, "It has been repeatedly held that the power of taxation in a municipal corporation is sufficient security for property taken by such corporation; hence, it logically follows that it is sufficient for property injured."

We are not impressed with the appellant's contention that there is no proper method provided in the act for ascertainment and payment of damages or for concur-

rent action between the counties in relation thereto. The act provides that, "the costs and expenses" of the joint construction of the bridge are to be paid by the "Counties respectively, in the proportion of the population thereof," and it further provides for the payment of damages for property taken, injured or destroyed and "authorizes the county commissioners of the respective counties" to raise the money therefor by the issuance of bonds, if necessary. These damages, when adjudicated and awarded to one injured, would constitute part of the "costs and expenses" of the bridge. Of course the construction of the bridge could not take place without the concurrent action of the two counties. Proceedings must be had in each of the counties affected before any final action can be taken which would cause such damages; and if these proceedings are not concurrent, those concluded in the first county would have to be subject to or await the action of the other county. The act provides that the court of quarter sessions of the county in which any tangible property taken or destroyed is situate, shall appoint viewers to assess the damages. By this method the courts of the two counties could, working concurrently, arrive at the total cost and expense of such items of damage. The act also provides that the damage to franchises suffered by the owners of the former bridge shall be ascertained in the same manner; and this presents the question as to which court shall adjudicate damages of this character. The preferable rule would probably be that the court of the county in which the headquarters of the corporation are situate, or the court wherein the first proceedings are had, should be intrusted with this duty; but these are matters of detail which the legislature has left for the courts and the administrative authorities to work out. While it would have been better had all such detail been provided for in the legislation, we cannot declare the statute invalid because of this omission; for the act distinctly declares that damages for injuries shall be paid, fixes the proportions in which they shall be paid, and provides machinery for ascertaining them.

The statute further provides that the commissioners of the several counties can jointly build the bridges over streams forming the boundary line between two counties, and "if the said commissioners of the said counties" (the two counties affected in any particular instance) shall neglect or refuse to act, then proceedings may be taken to compel action. It is contended by the appellant that this provision is in itself sufficient to invalidate the act, because it is revolutionary and an encroachment upon the functions of the courts. The full text of the provision is as follows: "If the said commissioners of the said counties shall neglect or refuse to act as herein provided, then, upon the petition of fifty property owners and tax-payers residing in the city, borough or township in which the bridge is or was located, which petition shall set forth fully all the facts supported by the affidavit of five of said property owners and tax-payers, to the court of common pleas of the counties where located, upon hearing, said court having jurisdiction shall issue a mandamus to said commissioners to proceed as provided by this Act." We fail to see anything objectionable in the provision. We construe it to mean that the courts in each of the counties shall have jurisdiction over the commissioners of their own county. The commissioners are first authorized to use their discretion as to whether or not a bridge should be built; but this discretion is expressly made subject to review by the common pleas of the respective counties. While the discretionary power of a public official cannot ordinarily be controlled by mandamus, there is nothing in the law to prevent the legislature from ordaining such control when conferring the power, and that is precisely what they did in this particular instance. It is not necessary to construe the statute as a legislative encroachment upon judicial powers; we can never assume that the legislature intended such encroachment, and that construction should not be placed upon an act of assembly unless the words employed leave no other choice. The language of the section is that the fifty property owners shall pre-

sent a petition fully setting forth the facts (it does not say what facts) and that "upon hearing" the court "shall issue a mandamus." The word "hearing" means "the session of any court, or of an adjunct thereof, for considering the proofs in a case:" Anderson's Law Dictionary, 506; "The receiving of facts and arguments thereon for the sake of deciding correctly:" 4 Words & Phrases, 3237. If the act had provided without more that upon the petition of the fifty property owners the court must issue the mandamus, the appellant's argument would have much force, but it does not so provide; on the contrary, it particularly leaves the ascertainment of the facts and the decision of the cause to the court. In other words, the statute makes the action of the county commissioners subject to review by the common pleas; and if upon such review the court decides that the commissioners, under the facts presented, should, as the representatives of the county, exercise their authority for the purpose of the joint construction of an inter-county bridge, then it can compel action by a mandamus. The use of the word "shall" is consistent with this construction, and the phrase "shall issue a mandamus" simply designates the writ which shall be used for the purpose of compelling county commissioners to act. It is to be assumed that before a court would issue the extraordinary writ of mandamus, in order to compel the county commissioners to enter into such an arrangement with the officials of another county, it would first ascertain as a fact the condition of each of the counties and see that the division of the financial burdens was properly arranged. We conclude that the act can be sustained as a constitutional and workable piece of legislation.

The act in question has been before the courts on several occasions. It was held to be constitutional in Seabolt v. Commissioners of Northumberland County, 187 Pa. 318, when attacked as special legislation and because of alleged defects in title. In Com. v. Attorney General et al., 13 Pa. Dist. Rep. 521, a proceeding concerning the bridge in this case, the amendment of May 13, 1901, was

upheld as not in conflict with the constitution, while another amendment was there declared void. When the act was again before us, in connection with the same bridge, in 197 Pa. 110, we said: "The county commissioners are authorized, not required, to rebuild destroyed and abandoned bridges. The discretion as to whether it is necessary . . . . and for the best interests of the county to do so, is, in the first instance, in them, but it is reviewable by the court . . . . and the action of the court appears to be intended to be final."

It is true that the original act of 1897, before its amendment by the act of 1901, uses the word "may" in connection with the phrase "issue a mandamus," instead of the word "shall;" but, as already explained, we construe the latter word, with its context, to have the same meaning as the former. It is also true that the facts found in 197 Pa. 110, so located the old bridge that the case was taken out of the act of 1897; but the amendment of 1901 makes the statute much more extensive in its operation, and the case as presented at the trial now under review was within the act as amended.

The act of 1897 as amended especially covers damages of the character claimed. As we understand the record, there was no denial that the plaintiff had owned the original bridge, that the commissioners had taken the old piers and toll house in the construction of the new bridge, or that they had been unable to agree with the plaintiff as to the amount of the damages sustained, if any. Hence the case falls squarely within the jurisdictional conditions for the appointment of viewers as provided in the act, and the fact that the defendants contended that the property claimed for had long since been abandoned and had no value, was not such a denial of the claimant's title as would estop the defendants from demanding their right to have the case tried according to the method prescribed in the statute.

We cannot look into the record of the mandamus proceedings under the act of 1897 for the alleged irregularities

whose existence the plaintiff asserts; those proceedings are not here for review, and we must assume the judgments entered therein to have been founded upon sufficient bases of fact. On the whole, we fail to see anything to take the case out of the special remedy prescribed in the act of assembly.

Since the court below had no original jurisdiction to try the case as instituted, the only judgment possible was one for the defendant. We might, therefore, conclude this already over lengthy opinion with that statement. But, with the thought of possibly ending the litigation, we have examined all the other points suggested by the specifications of error and ably argued by counsel, and while we do not conceive it necessary to make specific reference to the assignments, we will say that we have not been convinced of any reversible error in the rulings of the learned court below.

In conclusion we will notice briefly the principal rulings complained of. The grant to the bridge company must be construed most favorably for the public, and it cannot be said that the court below fell into error in holding that such grant could not be viewed as an exclusive franchise. The words used do not require such a construction, and so to hold would partially deprive the commonwealth of its sovereignty over the extension of roads and highways made necessary by the increase in population. Nor do we feel that error was committed in the conclusion that the ninth section of the Act of February 19, 1868, P. L. 177, did not allow the plaintiff a continuing franchise at the site of the old bridge as well as at the site upon which the new bridge was to be constructed. The authority given by the act was not to build an additional bridge, but to rebuild the old bridge at a new site, and we construe the section in question to mean that all of the plaintiff company's franchises for the bridge at the old site were preserved to it for the new bridge, and not that such franchises were to continue to exist at the old site. The plaintiff company's abandonment, for bridge purposes, of

the old site for more than forty years indicates that it likewise so construed the statute. The issues as to the old tollhouse and its value, and as to the value of the other tangible property claimed by the plaintiff, appear to have been fully and fairly treated in the charge of the trial judge. If it were an open question whether or not this case should be sent back to the court below for a re-trial, the incident complained of in the last assignment of error would not move us so to do.

The appeal is dismissed at the cost of the appellant.