## State Highway Commissioner v. Chambersburg & Bedford Turnpike Co., Appellant.

*Constitutional law—Act of May 31, 1911, P. L. 468—Amendment of Act of April 11, 1913, P. L. 59—Local and special legislation—State highways—Turnpikes—Eminent domain—Taking private property—Securing compensation.*

1. The Act of May 31, 1911, P. L. 468, entitled "An act providing for the establishment of a state highway department, etc.," and designating certain main traveled roads and state highways, the maintenance of which was committed to the state highway department, is not in violation of Article III, Section 7, of the Constitution, forbidding local and special legislation "authorizing the laying out, opening, altering or maintaining roads, highways, streets or alleys." The object of this provision was to prevent the legislature from granting opportunities for local road advantages to particular sections which are not general to all; it was not to prevent or hinder the development of a state-wide system of highways built under the control of the Commonwealth.

2. The said act, as amended by the Act of April 11, 1913, P. L. 59, is not unconstitutional because it appropriates property of turnpike companies for public use, and provides that the state highway commissioner may take immediate possession of any such turnpike road without the filing of a bond to secure the payment of damages, upon certifying that sufficient funds to pay damages have been appropriated by the legislature, in view of the fact that the state funds are by the terms of the act pledged as security for damages, and that the turnpike companies may enforce payment thereof by mandamus. The provision in the Constitution that damages must be paid or secured before private property may be taken is sufficiently complied with by these terms of the said act. When the credit of the Commonwealth is pledged for such damages, the filing of a bond is not required.

Argued May 27, 1913.    Appeal, No. 30, May T., 1913,

by defendant, from decree of Q. S. Fulton Co., Jan. Sess., 1913, No. 1, dismissing exceptions and ordering filing of declaration of state highway commissioner in case of State Highway Commissioner v. The President and Managers of the Chambersburg and Bedford Turnpike Road Company.  Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.  Affirmed.

Proceedings to condemn a turnpike road under the Act of May 31, 1911, P. L. 468.  Before SWOPE, P. J.

The opinion of the Supreme Court states the case.

The state highway commissioner, under the authority of the Act of May 31, 1911, and the amendment thereto of April 11, 1913, P. L. 59, filed a declaration to enter upon and take part of a road lying in Fulton County, which declaration was not accompanied by a bond to secure damages, but concluded with a certification "that sufficient funds to pay all possible damages, costs and expenses that shall be awarded or which shall accrue by reason of the said proceedings have been appropriated by the legislature, and are available for this specific purpose."  Exceptions were filed by the turnpike company.  The court made a decree dismissing the exceptions and ordering that the declaration should be filed of record.  The turnpike company appealed.

*Errors assigned* were overruling the exceptions and the decree of the court.

*Charles Walter,* of *Walter & Gillan,* with him *Sharpe & Elder* and *J. A. Strite,* for appellant.

*John W. Hoke,* with him *John C. Bell,* Attorney General, and *Wm. N. Trinkle,* Deputy Attorney General, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, June 27, 1913:

The appellant states two questions involved for our

consideration: First, "The Commonwealth of Pennsylvania by the Act of May 31, 1911, P. L. 468, entitled 'An act providing for the establishment of a state highway department, etc.,' designates certain main traveled roads and state highways, and commits the maintenance of them to the state highway department. Does this act violate Article III, Section 7, of the Constitution?"

The act in question is one of the most important pieces of legislation that has been placed upon the statute books of this State; its beneficent results will contribute to the happiness and welfare of all the people, and only an insurmountable conflict with the organic law would warrant a court in striking it down as unconstitutional.

To build and maintain roads is an inherent right of a sovereign state, which is not taken away by the Constitution of this Commonwealth. The part of the Constitution cited by the appellant provides that "the general assembly shall not pass any local or special law...... authorizing the laying out, opening, altering or maintaining roads, highways, streets or alleys." The object of this provision was to stop the legislature from granting opportunities for local road advantages to particular sections that are not general to all, that is, to prohibit the direct laying out, opening, altering or maintaining of roads by act of assembly for purely local purposes, and to forbid the prescribing of methods for so doing that do not and cannot prevail generally; the intent was not to prevent or hinder the development of a state-wide system of highways built by and under the direct control of the government of the Commonwealth, and there would be no justification for so construing the language employed. The act in question applies to all parts of the Commonwealth and provision is therein made for state roads in every county, so that all the "main traveled roads or routes between the county seats of the several counties of the Commonwealth and main traveled roads or routes leading to the state line, and between principal cities, shall be known, marked, built,

rebuilt, constructed, repaired, and maintained by and at the sole expense of the Commonwealth, and shall be under the exclusive authority and jurisdiction of the state highway department, and shall constitute a system of state highways" (Act of 1911, Section 6). Of course, these highways cannot be alike in every particular, but under this legislation, none of them is or can be laid out, opened, altered or maintained as a local road, nor are they in any sense state roads laid out, opened, altered, or maintained under local laws; on the contrary, each of them constitutes an. integral part of a state system of highways and can in nowise be considered local to the particular section through which it may happen to run. Each of these highways is exnecessitate local so far as the situation of any portion is concerned, but each as a whole may be considered state wide, for it is built and maintained for the use and benefit of all the people of the State and its location is merely incidental to the great system of which it forms a part; the legislation for the up-building of this system deals with a matter of general concern and it is not made local or special by reason of the designation of the 296 routes specified in the act.

We have said in certain cases cited by the appellant (Scranton School District, 113 Pa. 176, 190; Frost v. Cherry, 122 Pa. 417, 427), that "if local results either are or may be produced by a piece of legislation it offends against the Constitution," but "local results," in the sense in which the phrase was meant in those cases, are not produced by the legislation under consideration, and the authorities have no application. The argument that the upholding of the Act of 1911 will make it possible to evade by future amendments the constitutional provision which we have been considering, has no force; we have held that "the court will look at the substance and not at the form of legislation......and a local or special act repugnant to the fundamental law, will be declared void though it may be disguised as a general

act" (Sample v. Pittsburgh, 212 Pa. 533, 541), and this rule is a sufficient protection against the possible abuse pictured by the appellant. The appellant's first question involved must be answered in the negative.

The second question is stated thus: "The amendment to Section 9 of the Act of May 31, 1911, approved April 11, 1913, gives to the state highway commissioner the right to take immediate possession of any turnpike road upon his certifying that sufficient funds to pay damages have been appropriated by the legislature, which said funds are by the terms of the said act pledged as security for damages, and gives to the turnpike company the right to enforce payment by mandamus. Does this act secure to the turnpike company just compensation as required by Article I, Section 10, of the Constitution of Pennsylvania?"

The part of the Constitution in question provides that private property shall not be "taken or applied to public use without just compensation being first made or secured." Section 9 of the Act of 1911, as amended by the Act of 1913, provides, if a price cannot be agreed upon with the owners of a turnpike about to be taken for a state highway, that the Court of Quarter Sessions of the county in which the particular piece of road is located shall upon petition appoint a jury of view to assess the damages, and that "the damages so determined or awarded shall be paid by the Commonwealth." This is followed by the part of the act called to our attention by the appellant, viz: that the highway commissioner, at any time during the condemnation proceedings, by and with the approval and consent of the governor, and after notice to the owners, may "present to said court ......a declaration of his intention to immediately enter upon and take said turnpike......and to pay or cause to be paid to the said owner or owners such amount of damages as shall be assessed in the manner provided by this act......; which declaration shall contain a certificate of the state highway commissioner

......that sufficient funds to pay all possible damages are available for this specific purpose......; whereupon the funds in the hands of the state highway commissioner, or in the state treasury and specifically appropriated to the use of the state highway commissioner, shall be pledged and deemed as security for all damages ......and said turnpike shall immediately become a state highway......, and upon completion of the proceedings in condemnation the state highway commissioner shall accept the appraisement and verdict, and the damages so determined or awarded shall be paid by the Commonwealth......, and in case said damages and costs and expenses are not paid within thirty days from final adjudication and judgment thereon, the owner or owners......may enforce the payment of the same by writ of mandamus."

On this branch of the controversy, the appellant's contention is that just compensation within the meaning of the Constitution is not secured to it; but the contention falls when we consider that under the act in question the taking is "by the State in its sovereign capacity" (Jamison v. Cumberland County, 234 Pa. 621, 624). While a corporation must "pay or secure the price of a property before it is taken......" yet it is only necessary that the State shall "provide the means of payment at the passing of the act,......and the public purse ......has been held to be an adequate fund": Yost's Report, 17 Pa. 524. Also see: McClinton v. Railway Co., 66 Pa. 404; Long v. Fuller, 68 Pa. 170, 173; Delaware County's Appeal, 119 Pa. 159, 171; Lewisburg Bridge Co. v. Union County, 232 Pa. 255, 266. Here provision is made for assessing the damages and the credit of the Commonwealth is sufficiently pledged to pay for all property taken; this is an adequate remedy and ample security to the appellant. Although no deficiency of funds on hand to pay for the property appropriated is alleged, yet the appellant contends that the act is "unconstitutional in that the sufficiency of the

funds to pay the damages" is to be determined by the state highway commissioner. As to this, it is enough to say, that it does not appear that the commissioner has or is about to abuse the power conferred upon him; should such a case arise the courts can afford proper protection (Keene v. Bristol Borough, 26 Pa. 46). But this is not to be apprehended, since the law assumes that a public official will fully and only perform his duty.

The assignments of error are overruled and the decree is affirmed at the cost of the appellant.