## Crabtree et ux. v. Penn Title Insurance Co. et al.

*Randolph Stauffer*, for plaintiffs.

*Daniel G. Rothermel* and *P. Herbert Reigner*, for defendants.

SHANAMAN, J., July 18, 1955.—This was assumpsit, stipulated for trial before a judge without jury.

### Findings of Fact

1. Plaintiffs are William J. Crabtree and Florence L. Crabtree, his wife, residing in the City of Harrisburg, County of Dauphin.

2. Defendant, Penn Title Insurance Company, hereinafter referred to as title company, is a corporation having its principal place of business at 226 North Sixth Street, Reading, Berks County.

3. Defendant, Muhlenberg Township School District, hereinafter referred to as school district, is a municipal corporation, having its principal place of business at the High School, Bellevue Avenue, Laureldale, Muhlenberg Township, Berks County.

4. On April 14, 1948, the Water and Power Resources Board of the Commonwealth of Pennsylvania resolved to acquire by condemnation the property of plaintiffs (referring to it merely by location). On June 9, 1948, the same board resolved to acquire by condemnation the same property (describing it this time by courses and distances).

5. The Commonwealth, through said Water and Power Resources Board, entered and took partial possession of the said premises, and by the end of March, 1948, had staked out the entire golf course, so as to make it unusable.

6. A letter, dated June 10, 1948, addressed to plaintiffs and emanating from the office of the Secretary of the Department of Forests and Waters, acting through the Water and Power Resources Board, was

received by plaintiffs, in which it was stated that possession would be needed on June 21, 1948, and that plaintiffs should be prepared to vacate and surrender possession on that day.

7. Plaintiffs duly complied with said notice and vacated the said premises shortly before June 21, 1948, on which day the Commonwealth took possession thereof.

8. After June 21, 1948, the Commonwealth immediately started demolition of the dwelling house and completed it by June 23, 1948.

9. Plaintiffs have at no time had possession of any part of the condemned property since June 21, 1948.

10. On January 12, 1949, the same condemnor resolved that whereas the said condemnor had by its resolution of April 14, 1948, and supplementary resolution of June 9, 1948, condemned the property of plaintiffs described therein, and whereas an error or errors in the courses and distances of the description had been discovered, and the condemning board therefore desired to correct the description, it resolved to condemn the said property (with a description by courses and distances).

11. In both resolutions of June 9, 1948, and January 12, 1949, the acreage condemned was expressly the same, namely, 132.75 acres, more or less.

12. On or about October 4, 1949, Penn Title Insurnace Company conducted a settlement of damages and clearing of title for said premises between said Commonwealth of Pennsylvania and plaintiffs, and plaintiffs objected to the payment by them of the 1948 taxes, whereupon by agreement between the parties, said defendant retained out of moneys deposited in its hands by said Commonwealth for payment of plaintiffs' damages, the sum of $2,000 in escrow to cover said taxes.

13. Thereafter, on August 19, 1950, defendant, Penn Title Insurance Company, paid out of such fund taxes which were admittedly due in the amount of $709.46, leaving an unexpended balance in its hands from said escrow fund of $1,290.54. The $709.46 was taxes for 1948 other than school taxes.

14. On or about August 19, 1950, said defendant, Penn Title Insurance Company, paid to defendant, Muhlenberg Township School District, out of said escrow fund, the sum charged against said premises for school taxes for the year 1948 in the amount of $972 principal, together with 13 percent penalty, $126.26, a total of $1,098.26.

15. Said payment was for school taxes levied upon said premises for the year beginning the first Monday in July, 1948.

16. Said payment of school tax was made by said defendant, Penn Title Insurance Company, to said defendant, Muhlenberg Township School District, without plaintiffs' consent.

17. There still remains in said escrow account in the hands of defendant, Penn Title Insurance Company, an unexpended balance of $192.28, which is justly due and owing plaintiffs, which Title Company stands ready and willing to pay to plaintiffs.

18. On December 12, 1951, plaintiffs made demand on defendant, Muhlenberg Township School District, for repayment to them of said sum of $1,098.26 so paid to them by defendant, Penn Title Insurance Company, and payment was refused.

19. After becoming escrow-holder, the Penn Title Insurance Company subsequently requested plaintiffs to either pay the taxes or obtain a remission of them from the school district, and not receiving from them either a receipt or a certificate of exoneration finally paid the taxes to the school district. In so doing title

company held the opinion that the taxes were a valid claim against plaintiffs, due and payable by plaintiffs, and were a lien against the real estate.

20. The 1948 taxes, to whose payment at the settlement on October 4, 1949, objection was raised by plaintiffs, included not only the school taxes here in question, but also the road, county and light taxes. However, to the subsequent payment of the latter group of taxes, no objection is raised.

21. By the agreement of the condemnees (the present plaintiffs), and the condemnor (the Commonwealth of Pennsylvania), orally made at the settlement, title company became the holder of $2,000 in escrow, a portion of the total condemnation price for plaintiffs' land, in order to cover the said taxes for 1948, and to secure title company against its issuance of its policy at a time when the encumbrance of those taxes had not been removed.

22. Title company undertook at the settlement, either expressly or impliedly, to distribute the fund of $2,000 upon instructions or advices of the parties to the agreement, as soon as the proper time and occasion occurred for said distribution. Plaintiffs expressly or impliedly assumed to bring about such occasion and inform title company thereof. The title company did not assume to procure such occasion by its own efforts or by the exertions of its officers or agents.

23. The precise form of the obligations then assumed by the title company or by plaintiffs is not evidentially shown with sufficient clarity to justify an affirmation of either of their opposite contentions as to the original intent of the agreement to an extent beyond findings of fact 21 and 22.

24. The title company waited 10 months before paying the taxes, during which time, with the exception of an early letter from Mr. Crabtree that he had

retained a Mr. Wallace of Harrisburg to represent him, title company received no communication from the said attorney, and no word of instruction or information from Mr. Crabtree or anyone else, although title company repeatedly reminded Mr. Crabtree that something must be done and that penalties were accumulating, and although at least three weeks before the payment, title company notified Mr. Crabtree that it must now pay the tax unless something be done.

## Discussion

The date of school district's resolution levying the tax for 1948 does not appear in the record, nor can judicial notice be taken of it, but, in any case, the lien of the 1948 school tax did not exist before July 1, 1948, the beginning of the fiscal or tax year of the school district. Act of Assembly of March 21, 1945, P. L. 47, sec. 1, 53 PS §2021.1. The questions presented by the evidence are: (1) Whether plaintiffs were the legal owners of the property on July 1, 1948, and (2) if not, whether title company's payment of the 1948 school tax was within its authority under the circumstances existing at the time of the payment.

Before July 1, 1948, plaintiffs had ceased to be the owners of the property on which the tax was imposed. Condemnation was effected by the resolution of June 9, 1948, if not by the earlier one of April 14th. Furthermore, the land had been taken and entered, and plaintiffs had left it, all before July 1, 1948. The subsequent resolution of January 12, 1949, was merely a correction of an error in the courses and distances set forth in the prior resolution, and by its own language was intended as such a correction merely. The property taken was the same. We cannot, therefore, embrace the view of the school district and the title company that the condemning resolution of January 12, 1949, was the first and sole effective resolution of condemnation. That the attorney who drafted and

signed the Commonwealth's petition for viewers pleaded only the final resolution is unimportant. The final one expressly mentions the previous ones. The pleader merely avoided pointless surplusage. The title to the land must be regarded in the law as passing from plaintiffs to the Commonwealth at the time the land was taken by the resolution of condemnation and compensation was secured to the condemnee: Briegel v. Briegel et al., 307 Pa. 93, 96, 100. Compensation is legally secured when an appropriation is made by the legislature for the project: State Highway Commissioner v. C. & B. T. Co., 242 Pa. 171, 176; Com. v. Matter, 257 Pa. 322, 325. In the present case such appropriation was made by the assembly in the Schuylkill River Pollution Act of June 4, 1945, P. L. 1383, sec. 10, 32 PS §751.10. The payment of the 1948 school tax was, therefore, the payment of a tax upon real estate which plaintiffs had ceased to own before the tax became a lien, and due, and payable.

Refund of taxes erroneously paid is required by the Act of May 21, 1943, P. L. 349, sec. 1, 72 PS §5566b. School district cites the case of Pittsburgh Coal Co. v. Forward Twp. School District, 366 Pa. 489, for the proposition that the payment must be made under a mistaken assumption as to the facts. In that case, where the taxing resolution was illegal, the court, refusing to allow a refund, said: " 'But a tax intentionally and understandingly paid, although the assessment was made or the tax levied incorrectly, is not erroneously paid.' "

In the present case the tax was assessed and levied correctly. School district's resolution is not contended or shown to be wrong in any way. The paying title company made a mistake of fact in believing that a certain piece of real estate existed which had a tax and tax lien against it for 1948 school taxes, and the title company paid the supposed tax under that mis-

take. The school tax for 1948 was not due or owing by plaintiffs on July 1, 1948, or at any other time. Furthermore, the tax in question was not due or owing at all on that day by anyone, or on the day of its payment, because the Commonwealth was the owner, and the property had become public property, used for public purposes: Act of May 16, 1923, P. L. 207, sec. 5; Act of May 4, 1927, P. L. 733, sec. 1, 53 PS §2025.

"From this general principle, the rule arises that a municipality cannot successfully tax state-owned property unless it points to a statute clearly authorizing it to do so": Com. State Emp. Ret. System v. Dauphin Co. et al., 335 Pa. 177, 181. The general tax resolution of the school district was a legal levy on all taxable property within the district, but the debt which the paying title company attempted to liquidate, did not exist. It could not exist under existing legislation. The property on which the tax was assessed was in fact nonexistent, after the State acquired it, for taxable purposes, and the State acquired it before the beginning of the tax year 1948-1949. A verdict against school district takes nothing from it to which it is legally or morally entitled, although the tax collector in accepting the payment acted without fault. The payment is recoverable: Longacre Park Heating Co. v. Delaware County et al., 160 Pa. Superior Ct. 252. The fund did not bear interest in the hands of the escrow-holder. It should not bear interest in the hands of the school district, which is without fault. The verdict should be against the school district in the exact amount it received: Girard Trust Co. v. Philadelphia City and County, 359 Pa. 319.

A payment by school district directly to plaintiffs will make all whole, as regards this payment of school tax. The Penn Title Insurance Company is defendant in the proceedings and not a plaintiff. It

does not complain against defendant school district. It is unnecessary, therefore, to provide for a payment by the school district to the title insurance company, and then by that company to plaintiffs. On the other hand, any conceivable right title company may have to institute suit against school district to recover the money in order to repay it to plaintiffs, is settled and finally disposed of by a verdict for plaintiffs against school district.

Since title company admits holding a small unexpended remainder of the fund, which it has attempted to pay to plaintiffs and which plaintiffs have refused, plaintiffs should have a verdict against title company for that remainder without interest. Plaintiffs also desire a verdict against title company for an amount additional to that and equal to the verdict against school district. Plaintiffs contend that from the evidence the trial judge, sitting as a jury, should find that at the settlement plaintiffs or their attorney denied the validity of the 1948 tax liens and plaintiffs' liability for those taxes, because of the prior condemnation of the land, that title company then and there became apprised of that objection to the payment of the 1948 taxes out of the price agreed on by plaintiffs and the Commonwealth of Pennsylvania, that the escrow was then set up with the distinct and common understanding that title company should not pay the 1948 taxes unless it was finally settled that they were payable by plaintiffs.

Title company, on the other hand, contends that the trial judge should find that at the settlement no mention was made of the date of the condemnation or of its legal effect, if any, upon the lien, that no one said the lien was invalid but that plaintiffs' attorney, when the tax bills were presented, simply said that the Crabtrees believe they can obtain an exoneration of them and would like them not paid until they had

opportunity so to do, and the Crabtrees would either pay them or have them exonerated, that the escrow was then set up, and was simply a favor by title company to the vendors and the vendee. The decision of the question thus raised depends on what was said at the settlement. Neither Mr. Frederick Bertolet, the attorney for the Commonwealth, nor Mr. Charles Weidner, the then attorney for plaintiffs, was called to the witness stand. No inference is drawn from this, for they were available to both sides. The only witnesses who testified were Mr. Crabtree for plaintiffs and Mr. Hain for the title company. Mr. Hain is its secretary and title officer. Both he and Mr. Crabtree were present at the settlement. Both witnesses evinced their realization of the difficulty of remembering, after six years, either the exact words or the author of a particular statement. Both because of the unreliability of their memories after so many years, and because of some contradictions indicated either in the substance or in the form and manner of their answers, neither has established the respective contentions as to what was said and agreed, by the fair weight of the credible evidence. The general nature of what was done is clear enough, as well as the general obligation of title company to hold the money secure and distribute it properly. The precise engagements of title company and of plaintiffs, with reference to their above recited contentions, remain obscure. Without affirming either of the opposite contentions, the trial judge is of opinion that title company was justified in paying the taxes when it did.

While the precise understanding on which the minds of the parties met is not wholly established, it is clear that the agreement was primarily for plaintiffs' benefit. By the escrow of $2,000 plaintiffs were enabled at once to effectuate the settlement, and obtain at least the bulk of the promised price. To the title company

the escrow was indifferent, for they could issue their policy with or without condition. If without condition, the escrow, it is true, is necessary to assure the title company against loss, but their initial willingness to issue their policy under such agreement was a mere accommodation to the buyer and seller, and subserved no end of their own. As soon as they consented to hold the $2,000 under the escrow agreement, title company lay of course under obligations to hold the money securely and to distribute it properly. No one, however, suggests, nor is there any evidence that title company engaged to resolve the tax question by its own agents or attorneys. The title company was simply to hold the money until the parties or either of them obtained a determination of the liability, and was then to distribute the money in accordance therewith.

After vacating the premises on or shortly before June 21, 1948, the Crabtrees had removed to Harrisburg. The settlement took place in Reading on or about October 4, 1949. On January 30, 1950, Mr. Crabtree informed Penn Title Company by letter that David M. Wallace, Esquire, Harrisburg, would represent him in connection with the remaining settlement to be made with respect to the taxes. Mr. Charles Weidner, plaintiffs' attorney at the settlement, does not again appear in the transaction. Nearly seven months thereafter elapsed with nothing apparently done by the Crabtrees or their Harrisburg attorney, or by anyone else, to determine the matter. That the Commonwealth might rest inactive is understandable. It had its property, its title, and its insurance policy. Its financial obligation had been performed. Mr. Crabtree's inaction is less understandable. He had all or a part of $2,000 to get at once upon the liability being definitely settled. Mr. Crabtree testified that as regards the clearing up of the matter, he was relying on his lawyer. Such reliance could not relieve him of his duty to attend to the situation of the title company.

As far as appears, Mr. Crabtree did not even investigate whether his lawyer, Mr. Wallace, had done anything, although both Mr. Crabtree and Mr. Wallace reside or had offices in Harrisburg. Mr. Hain testifies that he on more than one occasion prodded Mr. Crabtree for action, and by telephonic conversation with him mentioned the running of penalties, and that finally in the latter part of July, 1950, he informed Mr. Crabtree that title company would have to pay the taxes if Mr. Crabtree did not attend to the matter. Mr. Hain further contends that Mr. Crabtree's answers to these conversations were that he would see his lawyer. From the lawyer, Mr. Hain had only dead silence. Mr. Crabtree's denials of such conversations and telephonic notice were uncertain and were cautiously qualified. The trial judge entertains no doubt that Mr. Hain did have the conversations to which he testifies. They are in themselves very likely to have taken place, because Mr. Hain must naturally have been concerned and finally have become anxious. The Crabtrees, owners of the $2,000, having pledged it to secure the title company, could have proceeded at law for a declaratory judgment: New Castle School District v. Travers et al., 353 Pa. 261; Grambo et al. v. South Side Bank & Trust Co., 141 Pa. Superior Ct. 176.

The penalties had so multiplied that on August 19, 1950, when title company paid the taxes, the total payment amounted to $1,807.72, leaving a remainder of $192.38 in the fund. On the total 1948 taxes of $1,599,75, interest had been and was accruing at 6 percent a year after May 1, 1949. In 10 months title company had received no instructions, and indeed no single useful word of information, despite the frequent telephonic urgings to Mr. Crabtree by Mr. Hain. The penalties were considerable; the title company was increasingly anxious, and thought that they had accorded ample time to plaintiffs to straighten the mat-

ter out. Through the lapse of time and the nonaction and apparent lack of interest of the parties, title company might not only conclude that the parties deemed the lien valid, a belief to which Mr. Hain adhered, but was entitled at least to consider the possibility that a new duty and liability of title company might be growing out of the delay. Furthermore, title company was liable to the Commonwealth upon its policy. Its indemnity was becoming insecure. Penn Title was not merely "in the middle," it was on a grill. It was not bound to wait until the penalties· and interest would bring the total claim of the school district to exactly $2,000. Already it was too late to pay the money into court, for the charges and expenses of that course would more than consume the fund. Mr. Crabtree had been definitely notified in July of title company's intention to pay. Mr. Crabtree's denial of this and other telephonic conversations is not convincing. Hearing nothing, and waiting until August 19th, title company paid the tax. In so doing title company acted reasonably under the circumstances, and breached no engagement. Therefore, the verdict for plaintiffs and against title company, should be only for the unexpended remainder of the fund.

### Conclusions of Law

1. The school tax on real estate, imposed by the Muhlenberg Township School District for its fiscal and tax year of July 1, 1948 to July 1, 1949, became due, collectable, and a lien on real estate, on the first day of the said year, namely on July 1, 1948.

2. Plaintiffs, William J. and Florence L. Crabtree, having ceased before July 1, 1948 to be the owners, and not in fact being the owners of the premises on July 1, 1948, were not liable for the school taxes for the said year.

3. The Commonwealth of Pennsylvania became the owner of the said premises by condemnation thereof,

through its Water and Power Resources Board, and also by securing the purchase of condemnation price therefor, on a date prior to July 1, 1948.

4. The Commonwealth of Pennsylvania was the owner of the said property on July 1, 1948.

5. The said real estate was not subject, in the hands and ownership of the Commonwealth of Pennsylvania, to the lien, levy or claim of the resolution of the School District of Muhlenberg Township, for the tax year beginning July 1, 1948, and no tax or lien against the said property for 1948 real estate taxes of the school district ever existed.

6. By agreement of the condemnees, who are the present plaintiffs, and the condemnor, the Commonwealth of Pennsylvania, Penn Title Insurance Company became the holder of $2,000 in escrow, a part of the total purchase price or condemnation figure for plaintiffs' land, in order to cover the taxes for 1948, and indemnify Title Insurance Company against its issuance of its title policy without removing the alleged encumbrance. The precise form of the engagements orally entered into at the settlement in regard to the $2,000 has not been established by the fair weight of the credible evidence.

7. It is, however, certain that the Crabtrees, with or without the Commonwealth, at least impliedly agreed that within a reasonable time Penn Title Insurance Company would be furnished with satisfactory evidence upon which it could safely and properly distribute the fund.

8. On or about August 19, 1950, the Penn Title Insurance Company inadvertently and erroneously paid a supposed 1948 school tax of the School District of Muhlenberg Township against the said premises.

9. The said payment was made in good faith by the Penn Title Insurance Company, in the mistaken belief that a valid tax and lien existed unpaid.

472

10. The Penn Title Insurance Company acted reasonably under the circumstances in paying the taxes.

11. The Penn Title Insurance Company has not breached any engagement in regard to the fund, either expressly or impliedly made by it.

12. Under existing legislation, the Muhlenberg School District may be required to repay school taxes not due that were erroneously paid.

13. The school district is liable to repay to plaintiffs the amount of the said school tax and accrued penalties, being $1,098.26, which it received on August 19, 1950, but without interest.

14. Penn Title Insurance Company is liable to pay to plaintiffs the unexpended remainder of the funds in its hands, being $192.38, without interest.

### Verdict

And now, to wit, July 18, 1955, a verdict is entered in favor of plaintiffs for $1,098.26 against Muhlenberg Township School District. A separate and independent verdict is entered in favor of plaintiffs for $192.38 against Penn Title Insurance Company.

By the trial judge, sitting without jury.