Com. of Pa. *v.* Stephens et al., Appellants.

Argued December 14, 1933.

Before TREXLER, P. J., CUNNINGHAM, STADT-FELD, PARKER and JAMES, JJ.

*Walter Thomas*, and with him *Kratz, Hillegas & Moran*, for appellants.

*Russell J. Brownback*, and with him *James W. Shull*, Deputy Attorney General and *Wm. A. Schnader*, Attorney General, for appellee.

OPINION BY JAMES, J., July 13, 1934:

This is an appeal by Emma D. Stephens, Administratrix c. t. a. of the Estate of William M. Stephens, deceased, and others, from an order of the Court of Common Pleas of Montgomery County, closing and confirming a judgment in ejectment and refusing to set aside the writ of habere facias and to grant a new trial.

Martha T. Stephens was the owner of certain property in Valley Forge. She died on January 19, 1918, leaving to survive her as heirs at law her husband, William M. Stephens and the following children: Mary S. Mowday, William S. Stephens, Alexander T. and Corson T. Stephens, who became tenants in common of the land in question.

At a meeting of the commissioners of Valley Forge Park on November 7, 1918, a resolution was adopted appropriating and condemning the land in question, of which action notice was given defendants on December 3, 1918. The commissioners, being unable to agree with defendants as to the amount of compensation, on behalf of the Commonwealth presented their petition for a jury of view on September 8, 1919 to assess the damages, which jury of view made an award from which an appeal was taken to the court of common pleas and on December 22, 1920, a jury in said court awarded the said defendants the sum of $15,300 and costs.

On December 17, 1924, a settlement was had at the Norristown-Penn Trust Company between E. J. Pen-

nell, Esq., representing the Commonwealth, and I. P. Knipe, Esq., who had appeared for appellants in the appeal before the jury in the common pleas at the time of the award and also appeared at the settlement in behalf of Mr. Stephens and the Stephens heirs, at which time the award of $15,300 was paid in full and distributed to the persons entitled thereto. William M. Stephens was not present at the settlement.

Since it was admitted that the defendants were entitled to interest on the sum of $15,300 from the date of the verdict until the date of the settlement and as the Commonwealth was not ready at that time to pay such interest, a deed executed by William M. Stephens and the other defendants, conveying title to the property in question, to the Commonwealth, was delivered by defendants, through their attorney, Mr. Knipe, to the Norristown-Penn Trust Company to be held in escrow by the trust company until such time as the agreement entered into at that time as to payment of interest should be carried out by the Commonwealth.

According to the testimony of E. J. Pennell, it was agreed that the total interest to accrue should be $3,659.29 from which should be deducted a rental value of $20 per month from the date of the verdict, leaving a balance of $2,702.58; that Stephens and his family were to be permitted to remain on the premises and that there should accrue to the Commonwealth a credit against the above amount of $20 per month until such time as Mr. Stephens removed from the premises or a final settlement was made of the interest.

At the settlement Mr. Knipe submitted what purported to be affidavits of the defendants as to the reasonable rental value of the property but these affidavits were not offered in evidence. There was also put in evidence a letter from Knipe to Stephens, dated December 15, 1924, stating that Mr. Pennell "has figured up what to be the proper rental to pay to the

state from now on,'' but which was not received until April when he returned from Florida. Stephens telegraphed for, received and cashed, his check for $3,998.87 and on April 18, 1925, Stephens signed the settlement sheet. This settlement sheet did not contain a statement that rental had been deducted. From the testimony of Mr. Pennell it appears that if Stephens was not already aware of the agreement to pay rent there was some discussion between these two as to the rental in September of 1926. Some time after September 13, 1926, Mr. Pennell, on behalf of the Commonwealth, after deducting rent, tendered William M. Stephens the sum of $2,317.92. In arriving at that figure the Commonwealth had charged Stephens rent at the rate of $20 per month from December, 1920 until July, 1926 and refused to allow William M. Stephens any interest on the balance. Mr. Stephens refused to accept said amount averring that he had never authorized his attorney to make an agreement with the Commonwealth wherein he should be charged $20 a month for rent or that the Commonwealth should be released from future interest. Correspondence between William M. Stephens and Mr. Knipe, who was his counsel until his death in 1929, was introduced, from which the jury could have found a ratification of this agreement. In October, 1927, the other tenants in common assigned their rights to William M. Stephens and the amount paid for the assignments was based upon the agreement entered into between Pennell and Knipe. On March 30, 1929, a judgment in ejectment was entered against the defendants and on November 25, 1929, appellants filed a petition to open the judgment averring that through inadvertence, ignorance of the law and improper advice, Stephens had failed to file an answer. The court opened the judgment ''for the sole purpose of determining whether or not the State of Pennsylvania

has paid or made a proper tender of all interest due from the State of Pennsylvania to the petitioner upon the award of $15,300 and whether or not the amount of such interest due was modified by any agreement between the parties to the suit as to retention of money in the nature of rent by the State of Pennsylvania." On this issue a trial resulted in a verdict for William M. Stephens in the sum of $1,916. Under this verdict the jury found that the agreement entered into by Mr. Knipe was binding upon the defendant and the Commonwealth had made a proper tender for any amount due under such an agreement.

The first question raised by appellants is that the Act of June 23, 1917, P. L. 640 (32 PS 1041), an amendment to the Act of May 30, 1893, P. L. 183, under which the condemnation proceedings were had, is unconstitutional in that it violates Article 3, Section 16 of the Pennsylvania Constitution, which provides: "No money shall be paid out of the treasury, except upon appropriations made by law ......," and Section 10 of Article 1 of the Pennsylvania Constitution which provides: " ...... nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured."

Valley Forge Park was established by the Act of May 30, 1893, P. L. 183, and provided for the condemnation of two hundred fifty acres, which was later increased by the Act of June 23, 1917, P. L. 640, to fifteen hundred acres. Under the Act of 1893, it was specifically provided that the owners of said land shall be paid by the state, and established a complete system for ascertaining and securing the payment of damages. In the Act of 1893 the sum of $25,000 was specifically appropriated for the purchase or condemnation of said lands and under the Appropriation Act No. 222A of July 25, 1917, the sum of $100,000

was appropriated for the purchase or condemnation of said lands.

The testimony disclosed that the land in question is one of thirty-six plots that had been condemned by the park commissioners and paid for by the Commonwealth and that in that group of proceedings no question was raised by any of the landowners as to the constitutionality of the act under which the proceedings were held. Neither was the question raised at any time during the proceeding to condemn the lands herein involved. At this late stage, after payment had been made of the damages awarded [less interest], we shall not discuss whether appellants can now raise the question as we are convinced that the act does not violate any of the provisions of the Constitution.

The constitutionality of this act was squarely decided where the same parties and the same question were involved in In re Petition for Appointment of Viewers for Taking of Land at Valley Forge by the State of Pennsylvania, 14 Mont. Co. 129 (1898), from which an appeal was taken to this court but was quashed, reported in 9 Pa. Superior Ct. 218. In its opinion the lower court said: "It is further urged that as the act appropriated specifically the sum of $25,000 for the purchase and condemnation of said land, and as this amount has been exhausted, that the commissioners can not make further condemnation until another appropriation is made. That this amount was not intended to cover the whole cost is apparent from the fact that 'in any case the said commissioners may negotiate and agree with the owners of any part of said ground as to the price thereof, and said price shall be reported to the court of quarter sessions; and if approved and confirmed by said court, it shall be binding on said state.' No matter what the price agreed upon was, the state was

bound, for the appropriation of $25,000 is not stated to be the limit of the whole price. That this was also the view of the Legislature is evident from the Act of 1895, P. L. 508, when they appropriated $10,000 additional and allowed further condemnations or purchases after two years.

"The point is squarely ruled in Shoemaker v. U. S., 147 U. S. 362 and in U. S. v. Gettysburg, 160 U. S. 668. In both cases land was taken for park purposes and both acts contained limitations as to the amount to be expended. In the latter case the court on this point said, 'The mere fact that Congress limited the amount to be appropriated for the purposes indicated does not render the law providing for the taking of the land invalid: Shoemaker v. U. S., 147 U. S. at 382.' Mr. Justice SHIRAS, in delivering the opinion of the court in the case cited, said 'The validity of the law is further challenged because the aggregate amount to be expended in the purchase of land for the park is limited to the amount of $1,200,000. It is said that this is equivalent to condemning the land and fixing their value by arbitrary enactment but a glance at the act shows that the property holders are not affected by the limitation. The value of the land is to be agreed upon or in the absence of agreement is to be found by appraisers to be appointed. The intention expressed by Congress not to go beyond a certain expenditure can not be deemed a direction to the appraisers to keep within any given limit in valuing any particular piece of property. It is not unusual for Congress in making appropriations for the erection of public buildings, including the purchase of sites, to name a sum beyond which expenditure shall not be made but nobody ever thought that such limits had anything to do with what the owners of property should have a right to receive in case proceedings to condemn had to be resorted to.' The case we are con-

sidering contains no limits as to the amount to be expended except as might be inferred from the appropriations made; and in view of the provisions contained in the acts cited, no such legal inference can be drawn." [1]

Further, in State Highway Commissioner v. C. & B. T. Co., 242 Pa. 171, 176, 88 A. 938, in an opinion by former Chief Justice MOSCHZISKER, the court said: "On this branch of the controversy, the appellant's contention is that just compensation within the meaning of the Constitution is not secured to it; but the contention falls when we consider that under the act in question the taking is 'by the State in its sovereign capacity' (Jamison v. Cumberland County, 234 Pa. 621, 624). While a corporation must 'pay or secure the price of a property before it is taken ......' yet it is only necessary that the State shall 'provide the means of payment at the passing of the act, ...... and the public purse ...... has been held to be an adequate fund': Yost's Report, 17 Pa. 524. Also see: McClinton v. Railway Co., 66 Pa. 404; Long v. Fuller, 68 Pa. 170, 173; Delaware County's Appeal, 119 Pa 159, 171; Lewisburg Bridge Co. v. Union County, 232 Pa. 255, 266. Here provision is made for assessing the damages and the credit of the Commonwealth is sufficiently pledged to pay for all property taken; this is an adequate remedy and ample security to the appellant. Although no deficiency of funds on hand to pay for the property appropriated is alleged, yet the appellant contends that the act is 'unconstitutional in that the sufficiency of the funds to pay the damages' is to be determined by the state highway commissioner. As to this, it is enough to say, that it does not appear that the commissioner has or is about to abuse the power conferred upon him; should such a case arise the courts can afford proper protection (Keene v. Bristol Borough, 26 Pa. 46). But this is

not to be apprehended, since the law assumes that a public official will fully and only perform his duty."

Under the Appropriation Act No. 222A of July 25, 1917, provision was made for the payment for the lands condemned. The apprehension of appellant that proper provision for payment was not made is further answered by the fact that payment has been made of the award and a legal tender of the balance remaining due.

Appellant urges that the burden of proof rested upon the commissioners of Valley Forge to show that there were sufficient funds in the state treasury at the time of the institution of the condemnation proceedings and relies in a large measure for his contention upon the latter portion of the Appropriation Act of July 25, 1917, which provides as follows: "Unused balances of sums appropriated for specific purposes shall not be used for other purposes, whether specific or general, and shall revert to the state treasury at the close of the fiscal year." In the body of the act the sum of $100,000 was appropriated for the purchase or condemnation of lands. In this connection appellant clearly loses sight of the fact that the action of the commissioners on November 7, 1918, specifically appropriating and condemning the land in question, was fully authorized under the act of assembly and although by reason of their inability to agree with the owners of the land as to the compensation to be paid the petition was not filed until September 8, 1919, still the action of the commissioners was sufficient to bind the moneys in the hands of the state treasurer although the money had not actually been paid out. The action of the commissioners established that there was no unused balance, as affecting the rights of appellant, which had reverted to the state treasury. Under such an appropriation act, it is not necessary that the funds be actually paid by the state treasury if those

authorized to expend the money actually do take such steps under the authority of the act of assembly as binds the Commonwealth. In view of the specific appropriation for the purchase or condemnation of the lands, the burden did not rest upon the commissioners to establish that at the particular time of the condemnation the funds were actually in the state treasury. This position is fully supported by the case of U. S. v. Gettysburg Electric Railway Co., supra. As stated in the court's opinion: "If it appeared by proof that the appropriation for the purpose indicated had been exhausted before proceedings had been commenced to take the land in controversy, or during the hearing, then the provision in the joint resolution directing that no obligation or liability upon the part of the government should be incurred or any expenditures made and to be made during the then session of Congress, would give rise to a very serious question. It is not now presented." In view of the fact that all awards have been paid, except the payment of interest on the award, in the present case, the question is not here involved.

Appellant further contends that the testimony offered fails to establish any authority of his counsel to enter into the agreement set up by the Commonwealth. It may be that the testimony does not establish that his counsel was directly authorized to conclude the agreement but the testimony is sufficient to warrant a jury in finding that the agreement had been ratified, that his subsequent possession of the premises was with full knowledge of the agreement made by his counsel with the Commonwealth, and for his benefit and advantage. Appellant had occupied the land from the date of the condemnation in 1918 until his eviction in 1929, during which time he conducted a refreshment stand and was making at least $1,200 per year above his living expenses.

The testimony discloses that two days before the settlement was made, Mr. Knipe had written Mr. Stephens stating that the money was ready for settlement and that Mr. Pennell had figured up what would be the proper rental to pay to the state from now on, and advised him to go to Mr. Burke to find what would be right for rent. This letter, he testified, was received by him in April upon his return from Florida, although a letter written by Mr. Knipe two days later in connection with the settlement was received in Florida. Upon Mr. Stephens' return, he did not question the authority of Mr. Knipe but complained that the interest should have been calculated from the date of the condemnation instead of the award. Later, complaint was made as to $20 rental. He further complained that the efforts to pay him off were to remove him from the premises and close his business. From the date of the settlement to the time of his death in 1929, Mr. Knipe continued to act as counsel, and on December 13, 1927 Mr. Knipe's letter to Mr. Stephens gives a complete statement of the balance due him under the agreement with Mr. Pennell, which is in absolute accordance with Mr. Pennell's testimony. An examination of the entire record clearly establishes that the testimony was sufficient from which the jury could find that the agreement was advantageous to appellant and was ratified by him.

Appellant earnestly argues that as the damages were assessed as of 1920 and the Commonwealth did not take possession of the premises until 1929, when the property had increased in value three fold, the damages were to be fixed as of 1929. Appellant has lost sight of the fact that in eminent domain proceedings, the damage fixed for the taking of land is not the value at the time of the taking of possession but the time of legal appropriation. In the present case every benefit was given the appellant when December

20, 1920, the date of the verdict, was fixed as the time of the taking.

When land is appropriated under the power of eminent domain the owner's right to any use of the land ceases. There is substituted for it a claim for damages and prima facie he is entitled to damages for delay in payment. This right continues throughout the proceedings and the burden is on the one exercising the right to show facts that will excuse the delay in payment: Pattison v. Buffalo R. & R. Ry. Co., 268 Pa. 555, 112 A. 101. In charging the jury that the Commonwealth's right to enter upon the premises began as of the date of the verdict of the jury, the court went farther than it was justified. The verdict of the jury concluded any and all damages to which appellants were entitled to the date of the verdict and from that point appellants were entitled to interest. But such claim was subject to such agreement as was entered into at a later date, which phase we have heretofore more fully considered.

Appellant complains that it was error for the lower court to admit the testimony as to the rental value of the land occupied by the appellant. It was admitted "for the purpose of showing that there was no overreaching on the part of Mr. Knipe." One of the questions submitted to the jury was whether the agreement had been ratified by the appellant. In determining this question, it was important to determine whether it was a reasonable agreement and one that was advantageous to the claimant. The testimony disclosed that a fair rental value of the premises was $35 per month, while the amount agreed upon was $20. Under these circumstances we believe the testimony was properly admitted.

In view of the length of this opinion we have not attempted to answer at length other questions submitted by appellant. We have examined with care the

exhaustive original and supplemental briefs submitted by the appellant and have given careful consideration thereto but upon examination of the entire record we find no error and the assignments of error are overruled.

Judgment affirmed.

Judges KELLER and BALDRIGE did not participate in the disposition of this case.