## Puloka v. Commonwealth et al.

*Paul A. Kunkel* and *John E. McDonough,* for petitioner.

*George W. Keitel,* Assistant Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for defendants.

HARGEST, P. J., November 5, 1936.—This case comes before us upon a petition for a mandamus against the Commonwealth, the Auditor General, and the State Treasurer, who is also custodian of the motor license fund, to require the payment of interest and costs to petitioner.

The facts are that petitioner, as plaintiff, recovered against the Commonwealth of Pennsylvania a verdict for damages in the sum of $2,662.50 for the taking of her land in the construction of a State highway, in the Court of Common Pleas of Delaware County. The proceeding was begun by a petition for the appointment of viewers.

The viewers were appointed and an award made. Plaintiff filed an appeal, and the verdict was for the amount above mentioned. After motions for a new trial and for judgment n. o. v. filed by the Commonwealth were disposed of, the Commonwealth took an appeal to the Supreme Court, and the case was affirmed. Thereupon petitioner, as plaintiff, demanded the amount of the judgment and $270.58 more, of which $207.68 was interest on the judgment from April 19, 1935, to August 7, 1936, and $62.90 for costs, which included printing of appellee's paper book, $23.45.

This mandamus is to require the payment of the interest and costs. Defendants have filed a motion to quash, averring (a) that the Commonwealth is not a proper party defendant, (b) that the Commonwealth is not liable for interest, and (c) the Commonwealth is not liable for costs.

It goes without saying that the Commonwealth of Pennsylvania, as such, is not a proper party defendant. It has not submitted itself to a writ of mandamus, and therefore, in the absence of any statute providing that such a writ may be issued against the Commonwealth, none can be properly issued.

However, the Auditor General and State Treasurer are proper parties in a suit of this kind. The first question is whether the Commonwealth is liable for interest. It is a well-settled principle of law that the Commonwealth, as sovereign, is not within the laws laid down for the government of its subjects, unless it is specifically named in such statutes. This principle is firmly established in Jones v. Tatham, 20 Pa. 398, 411. The court said:

"The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily applied."

This language was repeated in Baker et al. v. Kirschnek et al., 317 Pa. 225.

See also Commonwealth v. Yeakel, 1 Woodw. Dec. 143; Endlich on Interpretation of Statutes, sec. 161.

Even though a State submits itself to suit, it has been held in some jurisdictions (Kentucky, Maine, Nebraska), that interest cannot be claimed upon the judgment unless there is express legislative permission therefor. However, in South Dakota and Idaho, the contrary seems to have been decided; 59 C. J., sec. 497, and notes 11, 12 and 13.

In 15 R. C. L. 17, sec. 14, it is stated:

"It is well settled, both on principle and authority, that a state cannot be held to the payment of interest on its debts unless bound by an act of the legislature or by a lawful contract of its executive officers made within the scope of their duly constituted authority. . . . The theory upon which the rule is based is that whenever interest is allowed either by statute or by common law, except in cases where there has been a contract to pay interest, it is allowed for delay or default of the debtor. But delay or default cannot be attributed to the government. It is presumed to be always ready to pay what it owes. The apparently favored position of the government in this respect has been declared to be demanded by public policy."

Plaintiff in this case relies upon the cases of Respublica v. Mitchell, 2 Dallas 101, Milne v. Rempublicam, 3 Yeates 102, and Commonwealth v. Stephens et al., 114 Pa. Superior Ct. 126. In the first case the court, apparently definitely and very briefly, held, without any discussion of the subject upon an appeal from the settlement of an account by the Comptroller General: "That the State was liable to pay interest, as well as individuals." And in the second case it is held that where one pays money chargeable against the State he is entitled to interest from the time of payment. And this significant statement is added in a very short per curiam which contains no discussion whatever: ". . . interest is only due from the state, from the time of the demand on the legislature."

The question of sovereignty and the principle that interest is a penalty for delay was not apparently referred to in those old cases.

Standing alone, we might be impelled to follow them, even though contrary to well-recognized principles. In Commonwealth v. Stephens et al., supra, there was an ejectment proceeding to obtain possession of property which the Commonwealth had acquired for the Valley Forge Park, and for which viewers had awarded $15,300. The court, page 138, said:

"The verdict of the jury concluded any and all damages to which appellants were entitled to the date of the verdict and from that point appellants were entitled to interest."

But the question of the payment of interest by the Commonwealth was not raised. On page 129 it is said:

"Since it was admitted that the defendants were entitled to interest . . . the agreement entered into at that time as to payment of interest should be carried out by the Commonwealth."

So the right to require the Commonwealth to pay interest, without any statutory provision or any proper contract entered into by its officials, is not decided in the case of Commonwealth v. Stephens et al., supra.

All of the later decisions hold that the Commonwealth cannot be required to pay interest unless it has subjected itself to such payment. In Commonwealth v. Philadelphia County, 157 Pa. 531, 547, it is said:

"We recognize fully the law, that laches cannot be imputed to the Commonwealth, and her rights cannot be destroyed by the neglect of her agents."

Interest is, in effect, a penalty for laches in the payment of money. In Philadelphia v. Commonwealth, 276 Pa. 12, the Supreme Court dealt with the question of interest. It is there said:

"Interest, as between individuals, is recoverable under usage of trade, contract or statute. The theory on which interest is allowed, except in cases of contract to pay in-

terest, is that it is damages for delay or default in payment by the debtor, measured by a rate per cent. The State is not liable to pay interest on its debts unless bound by statute or by contract of its executive officers. The government is presumed to be always ready to pay, and it would be against public policy to declare it otherwise: 15 R. C. L. 17, section 14; United States v. Rogers, 255 U. S. 163, 169. . . .

"We have recognized interest claims against the State in several cases: Respublica v. Mitchell, 2 Dallas 101; Edmund Milne v. Rempublicam, 3 Yeates, 102, 103. See 36 Cyc., p. 906. Here we wish to emphasize, the State is dealing with one of its municipal subdivisions as one of its agents. We know of no law or section of the Constitution that forbids allowing interest, or why the State could not give it ex gratia for what seems not only a moral but a legal claim. The State could very properly have required the agent to pay without recompense, or with half or all." We now come to the question whether there is any act of assembly imposing interest upon the Commonwealth in the taking of land under the right of eminent domain. The Act of 1700, 1 Sm. L. 7, sec. 2, appears to be the first statute which allows lawful interest to a creditor upon a judgment from the time the judgment was obtained until satisfaction be made. The Act of April 6, 1859, P. L. 381, 12 PS §781, allows the recovery of interest from the date a verdict is rendered. The Act of April 25, 1929, P. L. 777, 26 PS §43, provides as follows:

"That the amount of damages allowed in a report of viewers for the taking, injury or destruction of property by the exercise of the right of eminent domain shall, as finally confirmed, bear interest at the rate of six per centum per annum from the date of the confirmation nisi of the report."

It is contended by the petitioner that this act necessarily subjects the Commonwealth to the payment of interest because the State alone was qualified to exercise the right of eminent domain, and that when interest was

chargeable it necessarily followed that, whether the sovereign or the agencies delegated by it exercised that right, interest should follow. The Commonwealth is not mentioned in the Act of 1929, supra, and at that time the Commonwealth itself paid no damages for the opening of highways. Section 16 of the Act of May 4, 1927, P. L. 692, as amended by the Act of April 13, 1933, P. L. 41, first made the Commonwealth liable to damages in the exercise of eminent domain under certain conditions. This section was further amended by the Act of July 12, 1935, P. L. 946. It is therein provided that where the county commissioners do not consent to a change of width, lines or location of a State highway, the Secretary of Highways may enter into an agreement with the owners, and, if an agreement cannot be made, either the owners or the Commonwealth

". . . may present their or its petition to the court of quarter sessions for the appointment of viewers to ascertain and assess such damage . . . in the same manner and with the same right of appeal to the owner or owners and to the Commonwealth as is hereinbefore provided in cases where the county agreed to such change, but the damages, when ascertained, shall be paid . . . out of moneys in the Motor License Fund."

The situation then presented is that the Commonwealth may directly exercise the right of eminent domain. And when it does, the proceeding is precisely the same as if any other party exercised it. It must pay the damages. When the damages are ascertained by a report of viewers the amount bears interest under the Act of 1929 above quoted.

The Commonwealth's position that interest cannot be chargeable leads to this anomalous situation: if the county agrees to the taking, it pays the damages, then interest is chargeable; if it does not, and the State proceeds, or even if the owner proceeds, interest is not chargeable. So that, depending upon who pays the dam-

ages for the same taking, the owner would get interest in one situation and not in another.

When the legislature provided that under certain cirsumstances the Commonwealth was to pay the damages, it is presumed to have acted with knowledge of the Act of 1929, that the damages allowed in a report of viewers when finally confirmed shall bear interest from the date of confirmation nisi of the report. If there was to be any denial of interest where the State proceeded, it would have been easy to have so stated. When the State subjected itself to the payment of damages, that carried with it the incidents which attached to such payment, namely, the payment of interest under the Act of 1929, unless it excepted itself out of the operation of that act. Certainly the equities of the situation are with petitioner in this case, because the State by an appeal to the Supreme Court has necessarily delayed the payment.

We do not overlook the argument of the Commonwealth that the reason there is no inherent obligation upon the Commonwealth to pay interest is the fact that payment by the Commonwealth for the taking of lands for roads is a matter of grace and not of right, because, in the original grant, six free acres were given by William Penn with every 100 acres purchased, and these six free acres were presumed to compensate for the laying out of public roads: M'Clenachan v. Curwin, 3 Yeates 362, 373; Commonwealth v. Fisher et al., 1 Penr. & W. 462, 465; Snively v. Washington Twp., 218 Pa. 249, 254; Soldiers and Sailors Memorial Bridge, 308 Pa. 487. We put our opinion squarely upon the interpretation of the Acts of 1929 and 1933.

The question of costs is somewhat different. Costs are peculiarly the creature of statutes. No costs were allowed a litigant at common law. As far back as the year 1278, it took the Statute of Gloucester, 6 Edw. I, c. 1, to impose costs in certain cases. Then followed the Statute of 3 Hen. VII, c. 10 (1486), awarding costs to plaintiff where defendant issued a writ of error; and the Statute of 23

Hen. VIII, c. 15 (1531), which imposed costs in nonsuits upon plaintiff. Then followed the Statute of 24 Hen. VIII, c. 8 (1532), which provided that the sovereign should not be liable to costs in cases under the Act of 23 Hen. VIII, just referred to. All of these early English statutes were in force in Pennsylvania: 3 Binn. 601, 616, and 618, The Act of 4 James I, c. 3 (1606), awarded defendants costs in the same kind of cases where plaintiff was entitled thereto. See Wadlinger on Costs, chapter 1; Black's Appeal, 106 Pa. 344.

In 59 C. J. 332, sec. 503, it is said:

"It is a general and well established rule, apart from statute, that costs are not recoverable from a state, in her own courts, whether she has brought suit as plaintiff or has properly been sued as defendant; or whether she is successful or defeated".

In Commonwealth v. Yeakel, 1 Woodw. Dec. 143, it is said:

"Especially in questions like this, the Commonwealth is not liable for costs except where so directed by act of Assembly; and this exemption is founded on the sovereign character of the state, amenable to no jurisdiction and subject to no process. *Comth. v. Co. Commrs., 8 S. & R. 151.*"

In a number of land damage cases costs were not allowed because no statute provided for them: Herbein v. Philadelphia & Reading R. R. Co., 9 Watts 272; Hoover v. Union Twp. School Dist., 4 Pa. C. C. 520; The Philadelphia, Germantown & Norristown R. R. Co. v. Johnson, 2 Whart. 275; In re Schick's Bill of Costs, 1 Pears. 266.

It therefore follows that, unless there is some statute directly imposing costs upon the Commonwealth when it has exercised the right of eminent domain, no costs are recoverable. The Act of May 19, 1897, P. L. 67, sec. 21, 12 PS §1160, provides the costs "shall be paid by the party finally losing the cause"; and the Act of April 15, 1907, P. L. 83, as amended by the Act of April 27, 1909, P. L. 263, 12 PS §1193, provides that "the party in whose

favor the final decision is rendered shall be entitled to charge, and collect from the losing party as part of the costs", the expense of printing paper books. The contention of petitioner is that the general language "the losing party" is sufficient to impose the costs on the Commonwealth. In Commonwealth v. Trunk et al., 320 Pa. 270, the Supreme Court held that in a criminal case, although the Commonwealth was nominally a party, it was not "the losing party" within the meaning of these statutes requiring it to pay the cost of printing paper books upon appeal. The court said:

"We cannot believe that when the legislature provided that costs should be paid by the losing party they meant thereby to make them payable out of the state treasury".

And it was held that the county in the criminal cases was the government, to prosecute and enforce the general criminal law, and therefore the losing party when defendant received the decision in his favor.

It must be remembered that these costs, if paid at all, are to be paid out of the motor license fund, and it is interesting to note that by section 2($n$), of the Act of June 3, 1933, P. L. 1484, 72 PS §3564, the legislature appropriated monies in the motor license fund, among other things: "For the payment of traveling expenses and witness fees, in the amount of two ($2) dollars per capita per diem, to witnesses testifying for the Commonwealth." This would seem to indicate that there was no intention to provide generally for the payment of costs of witnesses. The legislature also knew how to provide for costs when it meant that the State should pay them. In the Act of May 20, 1921, P. L. 984, which provides for the exercise of the right of eminent domain to take lands "for State forest purposes, for game preserve purposes, or for the perpetuation or protection of fish," section 10 provides for the payment to the owner of the amount finally determined, and "All costs in connection with any such proceedings shall be paid by the Commonwealth in like manner."

There is a great difference between acts providing for costs generally applicable to all litigants and acts which relate specifically to interest in the exercise of eminent domain, which is the exercise of sovereignty. In the one class the State is not liable unless it specifically subjects itself. In the other, when it provides for interest in all eminent domain proceedings and directly exercises that attribute of sovereignty it does subject itself to interest.

In In re Koch, 26 D. & C. 38, Judge Thomas, construing the proceeding under the Act of April 13, 1933, supra, relieving the counties from liability for damages, held that the costs could not be imposed upon the State but that the county is liable for the costs, even though it is not liable for the damages.

We also conclude that the Commonwealth is not liable for the costs in this case. It follows, however, that, the Commonwealth being liable for interest, the motion to quash the alternative writ of mandamus must be denied.

And now, November 5, 1936, the motion to quash the alternative writ of mandamus is hereby refused at the cost of defendants, and defendants are hereby directed to make return thereto within 10 days.