## Conn et ux. v. Commonwealth

*Andrew Banks* and *Culbertson & Stuckenrath,* for plaintiffs.

*Paul S. Lehman, George W. Keitel,* and *Joseph F. Ingham,* for Commonwealth.

BARNETT, P. J., December 21, 1936.—Upon petition of plaintiffs, George C. Conn and Mary F. Conn, his wife, viewers were appointed to assess against defendant, the Commonwealth of Pennsylvania, damages to plaintiffs' real estate occasioned by the reconstruction and relocation of a highway upon which their property fronted. From the award of the viewers both plaintiffs and the Commonwealth appealed. The appeals were tried together before a jury, who returned a verdict for the plaintiffs in the sum of $1,820.17, in which is included an allowance of $1,630 as damages and $190.17 as interest thereon. The Commonwealth has moved for a new trial.

Most of the essential facts are undisputed. Plaintiffs, on August 11, 1928, acquired title to a tract of land in Fermanagh Township, Juniata County, containing 1 acre 130 perches. At the time of the subsequent taking by the Commonwealth there were upon the property a dwelling house, a garage, and other improvements. The property had a frontage of 572 feet upon the north side of the public road leading from Mifflintown westward to Lewistown, to the center of which plaintiffs' title in theory extended. This road was laid out in 1803 in pursuance of an order of the Court of Quarter Sessions of Mifflin County, of which Juniata County was then a part, and its width was fixed at 33 feet. The legislature, by the Act of February 24, 1806, 4 Sm. L. 279, authorized the construction of a road from Harrisburg to Pittsburgh, and directed that the road be "laid out not exceeding fifty feet in width". This act was followed by the Act of March 4, 1807, 4 Sm. L. 370, providing for the incorporation of a company to make a road "from Harrisburg through Lewistown and Huntingdon to Pittsburgh", the corporation to have "all the powers, authorities and privileges, and be subject to all the duties", etc., specified in the preceding act. A supplemental act, approved March 31, 1821, 7 Sm. L. 438, provided, inter alia, for the organization of a corporation to construct that portion of the proposed road lying between Millerstown (east of Mifflintown) and Lewistown (west of Mifflintown), with the same authorities and duties. On May 14, 1821, a charter was granted by the Governor of Pennsylvania, under the provisions of the Act of 1821, supra, to the "President, Managers, and Company of the Millerstown and Lewistown turnpike road company", to be subject to all the duties and invested with "all the powers . . . rights and privileges" prescribed and granted by said act and the act (of 1807) to which it is supplementary. On September 1, 1823, the Governor, upon report of his commission that the last section of five miles of the turnpike road leading from Millerstown to Lewis-

town had been completed, "agreeably to the Acts of the General Assembly of the twenty-fourth day of February, 1806, the fourth day of March, 1807, the twenty-fourth of March, 1812, and the thirty-first day of March, 1821, which authorized the making of the said road", issued to the company his permit for the erection of toll gates for the collection of tolls. Minutes of the Governor's office, the first dated June 17, 1822, and the last, that above in part quoted, dated September 1, 1823, indicate that the whole 26½ miles of road between Millerstown and Lewistown was accepted by the Governor as completely constructed and that permits were issued for the collection of tolls upon all of it. From the turnpike road company's report to the Auditor General, dated January 12, 1829, it appears that during the preceding year tolls were collected by the company, over the same 26½ miles of road, to the amount of $2,256.80. The record contains nothing to show the operation of a turnpike road since that date. To the contrary, witnesses whose recollections go back 65 or 70 years, to 1871 or 1866, testify that the road was never within their memories other than an ordinary township road, maintained by the township supervisors.

It was stipulated by counsel at the trial that the center line of the turnpike road, as it passed the property now owned by plaintiffs, coincided with that of the former township road.

Plaintiffs conceded the Commonwealth's superior right in a strip of land 572 feet in length and 16½ feet in width, consisting of the land lying between the center line of the original 33-feet wide township road and its northern boundary. The Commonwealth contended its right extended from the center line to a line parallel with and distant 25 feet from it, the northern half of the turnpike's width of 50 feet. The jury were instructed to regard the width of the road as 33 feet. We are convinced the instruction was erroneous.

Plaintiffs contend, because of the turnpike company's abandonment of its rights for more than a hundred years and the apparent reversion of the turnpike to the status of a township road, that when the Commonwealth took over the road as a State highway, it acquired nothing more than the original township road 33 feet in width. We think the contention is not well founded.

The legislature, after its early encouragement of the construction of turnpike roads upon what seems to have been too grand a scale for the period, was soon faced with the problem of the status of roads which had been abandoned by their corporate creators. Its attitude toward such roads has uniformly been that of preserving them for public use. Thus the Act of April 19, 1844, P. L. 314, sec. 8, required township supervisors "to take charge of, and put in good order and repair, such part of any such road as may be in their respective townships, and from time to time maintain and keep in good order, all such parts of said roads, in the same manner as if the same were county roads". Other acts manifesting the same purpose are those of June 11, 1879, P. L. 126; July 10, 1901, P. L. 650; April 25, 1907, P. L. 104. The Act of June 2, 1887, P. L. 306, provides for the condemnation, under certain circumstances, of turnpike roads, and for their maintenance thereafter as public highways at public expense. It is clear that the legislature regarded the turnpike companies only as agencies to assist the Commonwealth, which contributed to the expense, in the construction of public highways, and that its intention has always been that turnpike roads, regardless of the fate of the companies that built them, should remain public highways unless and until duly vacated by prescribed legal process. The Act of March 22, 1871, P. L. 231, is not inconsistent with this conclusion. The purpose of this act manifestly was not to deprive the Commonwealth and the public of their rights in a highway, but to take back from the specified companies franchises which they had

ceased to exercise for the public benefit. This is apparent from the title of the act, which reads:

"An Act Relating to non-used and abandoned *franchises* of turnpike, plankroad, canal and slack-water navigation companies or public highways, providing what shall constitute evidence of abandonment." [Italics ours.]

Even were this not so, there is not the least evidence that the road in question, "for the period of five successive years", or for any period whatever, has been "decayed, out of repair and unused, for the purposes mentioned in the charter of such [the] company". The only abandonment has been that of the company's franchises.

The courts have pursued the same course respecting turnpike roads as has the legislature. In Derry Township Road, 30 Pa. Superior Ct. 538, 540, Judge Porter says:

"That a turnpike is a public highway, constructed by virtue of public authority and for public purposes, must be accepted as definitely settled in Pennsylvania . . . The company which constructs the road has the franchise to collect the tolls authorized by law, but if the charter of the company is forfeited, or the corporation abandons the road, the road continues to be a public highway: Turnpike Company v. Brown, 2 P. & W. 462; Lancaster Turnpike Company v. Rogers, 2 Pa. 114; Northern Central Railway Co. v. Commonwealth, 90 Pa. 300. The corporation was the agent of the state for the purpose of constructing the road, the road is a part of the system of public highways of the Commonwealth". See also Pittsburgh, etc., R. R. Co. v. Commonwealth, ex rel., 104 Pa. 583; Commonwealth v. Moorehead, 118 Pa. 344, 354; Ackerman v. City of Williamsport, 227 Pa. 591; Suburban Rapid Transit Street Rwy. Co. v. Monongahela Natural Gas Co., 230 Pa. 109, 114.

In the absence of evidence to show that the turnpike company took a narrower right of way than that authorized by the Act of 1821, by reference to the Acts of 1807 and 1806, the legal presumption is that it took the full

permitted width of 50 feet: Lenhart v. Wright et al., 286 Pa. 351, 358. To this width of road the Commonwealth was entitled when it took the highway for purposes of reconstruction, and the jury should have been so instructed.

The instruction to allow interest on the award from the date of the Commonwealth's taking of the land was erroneous.

"It is well settled, both on principle and authority, that a state cannot be held to the payment of interest on its debts unless bound by an act of the legislature or by a lawful contract of its executive officers made within the scope of their duly constituted authority": 15 R. C. L. 17, sec. 14.

In Philadelphia v. Commonwealth, 276 Pa. 12, interest was allowed upon the city's claim for reimbursement of primary election expenses, but the allowance was under authority of the Act of June 22, 1917, P. L. 636, which expressly authorized the collection of interest. In that case Mr. Justice (now Chief Justice) Kephart stated the rule to be that:

"The State is not liable to pay interest on its debts unless bound by statute or by contract of its executive officers. The government is presumed to be always ready to pay, and it would be against public policy to declare it otherwise: 15 R. C. L. 17, section 14; United States v. Rogers, 255 U. S. 163, 169."

The case of Commonwealth v. Stephens et al., 114 Pa. Superior Ct. 126, 138, is not inconsistent with the rule as stated. Not only was there in that case, involving settlement for lands condemned by the State for Valley Forge Park, a specific agreement for the payment of interest, but the interest there allowed was upon a final judgment of the Court of Common Pleas of Montgomery County upon an appeal from the award of viewers. The case is not authority for the proposition that interest may be added to damages for land taken by the Commonwealth

from the date of the taking to the time of the award of viewers or the verdict of a jury. In his opinion Judge James quotes from the opinion of the Supreme Court in Pattison v. Buffalo, Rochester & Pittsburgh Rwy. Co., 268 Pa. 555, where defendant was a private corporation. The quotation was by way of discussion, but the point decided in the case, where the Commonwealth was defendant, was that:

"The verdict of the jury concluded any and all damages to which appellants were entitled to the date of the verdict and from that point appellants were entitled to interest."

However, the Act of April 25, 1929, P. L. 777, provides:

"That the amount of damages allowed in a report of viewers for the taking, injury or destruction of property by the exercise of the right of eminent domain shall, as finally confirmed, bear interest at the rate of six per centum per annum from the date of the confirmation nisi of the report."

The report, with its allowance of damages, is not finally confirmed, when an appeal is taken, until judgment is entered upon the verdict of the jury. The jury should have been instructed to compute interest, not from the date of the taking, but from the date of the confirmation nisi of the report of the viewers.

We find no error in the reference made in the charge to "the destruction of drains". The evidence to which this reference related was part of the description of the physical injury done to the property, and not the basis of a claim for interference with drainage or injury resulting from drainage from the highway.

And now, December 21, 1936, the rule for the new trial is made absolute. Exception allowed plaintiffs.

From J. Howard Neely, Mifflintown.